# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **C.W.-1 and C.W.-2**

**No. 19-0694** (Webster County 17-JA-115 and 17-JA-116)

**FILED**
**June 25, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.W., by counsel Andrew Chattin, appeals the Circuit Court of Webster County's July 2, 2019, order terminating her custodial rights to C.W.-1 and C.W.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Mary E. Snead, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her custodial rights and denying her post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2018, the DHHR filed an abuse and neglect petition against petitioner after she was arrested for possession with intent to deliver methamphetamine and marijuana during a traffic stop. The petition further alleged that DHHR workers went to petitioner's home after a referral of possible drug use and lack of appropriate housing. According to the petition, the DHHR found the home to be unsuitable for habitation with incomplete walls, exposed wiring, and falling ceiling tiles. The petition alleged that petitioner told the DHHR worker that she used marijuana for years and she continued to use marijuana. The petition further alleged she tested positive for

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, we will refer to them as C.W.-1 and C.W.-2, respectively, throughout this memorandum decision.

marijuana and tramadol in separate drug screens and admitted that although she had custody of the children, they had been living with their father for the last month while she attempted to find a home. The DHHR alleged that petitioner sporadically lived with her mother but frequently moved with the children and that these moves generally included different male companions. Accordingly, the DHHR alleged that petitioner failed to maintain a stable, fit, and suitable home for the children and was addicted and abused controlled substances which affected her ability to parent.

The circuit court held an adjudicatory hearing in March of 2018. The circuit court considered petitioner's admission to long term marijuana use, periods of homelessness, and her arrest, where controlled substances and guns were found in the vehicle she was driving. The circuit court found that these incidents demonstrated petitioner's continued involvement with controlled substances and adjudicated her as an abusing parent.

In April of 2018, the circuit court held a hearing, but deferred ruling on petitioner's motion for an improvement period. In May of 2018, the DHHR requested a ruling on petitioner's motion, adding that petitioner had tested positive for marijuana twice that month. In July of 2018, the circuit court issued an order stemming from the April of 2018 hearing, finding that petitioner was "her own worst enemy" and had "been less than truthful." Nevertheless, the circuit court found that "based upon the evidence . . . the [c]ourt is not inclined to terminate parental rights at this time" and granted petitioner a six month improvement period so she could have visitation with the children. In granting the improvement period, the circuit court gave legal and physical care, custody, and control of the children to their father, with whom the children had been living for several months. The circuit court further laid out the terms and conditions of petitioner's improvement period, including that she was barred from consuming controlled substances, being in the presence of anyone possessing or consuming controlled substances, and being in the presence of anyone convicted of a felony offense, except while she was at a day report center. Petitioner was also required to participate in outpatient drug treatment and counseling, and complete parenting classes. Finally, the circuit court granted petitioner supervised visitation, provided she complied with the terms and conditions of her improvement period.

In August of 2018, the DHHR filed a motion to suspend petitioner's visits, revoke her improvement period, and terminate her parental rights. In support of its motion, the DHHR alleged that at a multidisciplinary team meeting petitioner admitted to permitting a convicted felon into her residence in violation of the terms and conditions of her improvement period. In October of 2018, the circuit court granted the DHHR's motion to suspend petitioner's visitation. In November of 2018, the circuit court held a hearing on the DHHR's motion to terminate petitioner's parental rights. The court agreed with the DHHR that "this case should have never gotten to this point" and the "biggest problem in this case" was petitioner's attitude. Specifically, the circuit court found petitioner to be evasive and further found that she "skirts the issues." The circuit court did not revoke petitioner's improvement period, but "only because the children have previously been placed" with their father. Accordingly, the circuit court extended the original six month improvement period for an additional three months, but ordered that petitioner's visits remain suspended, and that petitioner and the children undergo psychological evaluations.

The circuit court held a hearing on petitioner's motion to reinstate visits in February of 2019. The circuit court found that visits were "not to be considered for the best interests of the parents," but "for the best interests of the children" and denied petitioner's motion. In May of 2019, the circuit court held a hearing and heard testimony from several witnesses, including a DHHR worker, C.W.-1's therapist, petitioner, and the children's father. The father testified that C.W.-1 had "real bad nightmares" after supervised visitation with petitioner. The therapist who regularly saw C.W.-1 also testified that the child had "acting-out behaviors when she was seeing [petitioner]," including "being angry, mad, feeling insecure" and that "those behaviors did subside" when the child stopped seeing petitioner. Further, the therapist testified that C.W.-1 felt "safe and secure" with her father, "d[id not] want to leave that environment" and that reinstituting visitation with petitioner was not in the children's best interest.

The circuit court found it was "of the opinion of one thing with certainty, [namely], the children are doing well since being placed with their natural father." Specifically, the circuit court found that C.W.-1 had "improved since [petitioner's] visits were suspended . . . because of the mother's conduct." The circuit court further found that although petitioner "had recent improvement and it appears that she will complete her improvement period," it was "not bound to return custody of a child upon completion of an improvement period." Based on the evidence presented, the circuit court terminated petitioner's custodial rights and set a further hearing regarding visitation. In June of 2019, the circuit court held a final dispositional hearing and found that "visitation is for the benefit of the children, not the parents." The circuit court further found that although petitioner completed her improvement period, C.W.-1 "expressed that she wanted safety" and that petitioner's conduct "jeopardized the safety of the children and clearly traumatized [the child]." Additionally, the court found C.W.-2 was "a young child and has not seen [petitioner] since November [of 2018] due to [petitioner's] conduct" and that it was "contrary to the best interests of the children to grant visits." Accordingly, the circuit court denied petitioner post-termination visitation.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[2]According to the parties, the children have achieved permanency by being placed in the custody of their nonabusing father.

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her custodial rights because she substantially complied with her improvement period and corrected the conditions of abuse and neglect. According to petitioner, the "two main allegations" that needed to be corrected were her substance abuse and her failure to maintain a fit and suitable home. This argument, however, not only misstates the record but also ignores her required compliance with all of the terms of her improvement period.

When petitioner was granted an improvement period in July of 2018, she agreed that she was barred from having any contact with a convicted felon, other than at a day report center, as one of the conditions of her improvement period. In August of 2018, however, the DHHR filed its first motion to revoke petitioner's improvement period and terminate her parental rights, in part, because she admitted at a multidisciplinary team meeting to allowing a felon—convicted for operating or attempting to operate a clandestine drug lab—inside her apartment. Additionally, petitioner admits she made an inappropriate remark about the children's stepmother during a visit with the children. Although the circuit court allowed petitioner to continue in her improvement period, it suspended her visitation with the children and found at a hearing that "this case should have never gotten to this point" and the "biggest problem" was petitioner's attitude, finding that she was evasive and "skirts the issues." Finally, the circuit court decided it would not revoke petitioner's improvement period but "only because the children have previously been placed" with their father.

Despite all this, petitioner argues that she remedied the main conditions of abuse and neglect and complied with many of the terms of her improvement period. While petitioner is correct that the record shows that she was, at times, compliant with the terms of her improvement period and that the circuit court permitted the improvement period to continue after multiple review hearings, she ignores the fact that her compliance was sporadic and she misrepresented herself to the DHHR and the circuit court on several occasions. As such, the record is clear that despite several continuances of her improvement period, petitioner failed to maintain her compliance throughout the proceedings. As this Court has held,

> "[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child." Syllabus point 6, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991).

Syl. Pt. 3, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). In short, petitioner's assertion that she substantially complied with the improvement period ignores the fact that her lack of candor and ability to comply with all of its terms were not remedied sufficiently to justify the return of the children to her care.

Next, petitioner argues that the termination of her custodial rights erroneously relied on two main arguments put forth by the DHHR: (1) that petitioner had not seen her children in several months and (2) that psychological and counseling evaluations of C.W.-1 supported termination. Petitioner argues it was "disingenuous" for the circuit court to consider that petitioner had not seen the children in several months when the circuit court suspended her visitation in October of 2018. Petitioner argues that the reasoning of the circuit court was insufficient to suspend visitation and relied on "one inappropriate remark concerning the child's stepmother" and "the presence of a classmate of her day report center program for a few minutes at her apartment." Further, petitioner argues the circuit court and DHHR erroneously relied upon the statements of C.W.-1, a four-year-old child, that she "felt safe with her father and stepmother and that she no longer wanted to see [petitioner]." Petitioner argues that the counselor admitted at the dispositional hearing that C.W.-1 "had nothing bad to say about her mother." Petitioner also argues that the father testified that "he was against all contact of his children with their mother" and that the father's opposition to petitioner visiting the children exerted "undue influence" on C.W.-1 "to tell the counselor and psychiatrist that she no longer wanted to see her mother." Finally, petitioner argues it "should not be left up to a four-year-old to determine whether or not she should live with or visit with her mother in the future." We find petitioner's arguments unavailing.

While petitioner is correct that she had not seen the children in several months prior to the termination of her parental rights, she acknowledges this is because her visitation was suspended due to noncompliance during her improvement period. Petitioner downplays the severity of her noncompliance as a series of isolated incidents, but the circuit court was well within its discretion to suspend her visitation due to noncompliance. The circuit court found petitioner's noncompliance was not merely isolated incidents as petitioner argues but reflected petitioner's poor attitude and lack of candor throughout the proceedings. Further, the circuit court was guided by the best interests of the children in declining to reinstate visitation upon petitioner's motion in February of 2019.

Additionally, the circuit court properly considered the statements of the children's nonabusing father and therapist in reaching its decision to terminate petitioner's custodial rights. Petitioner is correct that the children's father did testify at the dispositional hearing that he disagreed with a recommendation for petitioner to begin therapeutic visits with C.W.-1. However, the father testified that this was because the child "would have real bad nightmares," describing them further as "pretty, pretty bad." When asked whether giving the counselor "leeway to stop those visits" if the counselor felt it "wasn't in [C.W.-1's] best interest would ease your concerns," the father testified, "yes . . . to be honest with you." The testimony with the father stopped there and thus, while the father was concerned about petitioner receiving visitation, he did not entirely oppose the idea of visitation during his testimony as petitioner argues. Further, the therapist testified that she did not think visits were in the children's best interests for the same reasons as the nonabusing father. The therapist testified that C.W.-1 would act out and had poor behavior, which ceased when petitioner's visits with the children were suspended. Accordingly, the circuit court properly considered these reactions and testimony when considering the best interests of the children.

Next, to the extent petitioner argues that she substantially complied with certain aspects of her improvement period, we have held that "[i]n making the final disposition in a child abuse and

neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Additionally, "'[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014). We note that, although petitioner complied with many components of her family case plan, she failed to maintain compliance with all of the terms and conditions of her improvement period. Moreover, C.W.-1's severe behavioral problems lessened after visits with petitioner stopped. The circuit court also found that C.W.-1 "expressed that she wanted safety" and that petitioner's conduct "jeopardized the safety of the children and clearly traumatized [the child]." Finally, the circuit court considered that the children were doing well for several months in the placement with their nonabusing father. For these reasons, we find no error in the circuit court's decision to terminate petitioner's custodial rights as it is clear that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and termination of petitioner's custodial rights was necessary for the welfare of the children. Additionally, to the extent petitioner argues a less restrictive alternative should have been imposed, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)[3]] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. at 558, 712 S.E.2d at 55. As such, we find that the circuit court did not err in terminating petitioner's custodial rights.

Finally, petitioner argues that the circuit court erred in denying her post-termination visitation with the children because the circuit court "relied on statements which the child [C.W.-1] made to her therapist to the effect that the child no longer wanted visitation with her mother." Petitioner further argues that the circuit court should not have considered the child's wishes when determining visitation because of her age. We find, however, that the circuit court did not consider the child's wishes in rendering this decision and, instead, considered the evidence regarding the child's best interests.

As this Court has held,

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among

---

[3]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Contrary to petitioner's arguments, the decision about visitation was not predicated on the minor child's wishes, but rather the therapist's recommendation for the child. The therapist had been working with C.W.-1 for several months and had established rapport with her. The therapist testified that she made her recommendations based almost entirely upon her interactions with the child and did not consider much outside information, but was able to opine on the best interests of the child. Indeed, the circuit court's final order clearly states that post-termination visitation was denied because such visitation would be inconsistent with the best interests of the children. This finding was based upon ample evidence of petitioner's detrimental impact upon the children, both while they were in her custody and following visits during the proceedings. Given the circuit court's detailed order on appeal and its specific findings regarding the denial of post-termination visitation, we find that petitioner is entitled to no relief on this issue.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 2, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison